FILED IN CHAMBERS
U.S.D.C.  Atlanta

SEP 21 2007

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JODI EBERHART, JANET
CUNNINGHAM, MICHAEL P.
MONTESANI, CATHERINE MORGAN,
and all others similarly
situated,

        Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant.

CIVIL ACTION NO.

1:06-CV-01671-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [32] and plaintiffs' Amended Motion for Oral Argument [44].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [32] should be **DENIED** and plaintiffs' Amended Motion for Oral Argument [44] should be **DENIED**.

## BACKGROUND

Plaintiffs, who are Charter Communications subscribers, filed a nationwide class action on June 12, 2006 in the Superior Court of Gwinnett County, Georgia alleging various state law causes of action based on defendant Charter Communications, Inc.'s ("Charter") alleged

AO 72A
(Rev.8/82)

wrongful overcharge of franchise fees to plaintiffs. According to the Complaint, defendant Charter, a cable operator, paid and continues to pay, less franchise fees to local franchising authorities ("LFAs") than it has collected from Charter subscribers, and it then purportedly retains the difference. (Compl. at ¶ 2.)

Defendant filed a timely notice of removal to this Court, contending that this Court has diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453; 28 U.S.C. § 1332(d)(2), and federal question jurisdiction pursuant to 28 U.S.C. § 1331. At first, plaintiffs sought to remand the case to state court (Mot. to Remand [17]), but ultimately conceded that this Court has jurisdiction under the CAFA.[1] (Pls.' Reply and Withdrawal of Mot. to Remand [34] at 1.) Plaintiffs did not concede or contend that this Court has federal question jurisdiction, however. (*Id.*)

After removal, defendant filed a motion to dismiss plaintiffs'

---

[1] The CAFA authorizes the removal of a putative class action if it meets the following requirements: (1) it was "commenced" on or after February 18, 2005; (2) the amount in controversy exceeds $5 million in aggregate; (3) the citizenship of at least one member of the proposed class is diverse from any defendant; and (4) the plaintiff class includes 100 or more members.

On October 5, 2006, plaintiffs conceded that defendant could remove the case to federal court under the CAFA based on documentary evidence that the amount in controversy exceeded $5 million. (Pls.' Reply and Withdrawal of Mot. to Remand at 1-3.) Thus, whether or not there is federal question jurisdiction, diversity jurisdiction under CAFA exists.

AO 72A
(Rev.8/82)

Complaint.   (Mot. to Dismiss [10].)   In addition to responding to this motion, plaintiffs filed a motion to amend their complaint in order to cure certain deficiencies in the original Complaint.   (Mot. to Amend Compl. [29].)   Specifically, plaintiffs sought to add facts concerning the alleged overcharges, to clarify that plaintiffs only seek reimbursement for overcharges due to estimates performed by Charter, and to state the definition of the "class" more clearly. (Br. in Supp. of Mot. to Amend Compl. [29-2] at 8.)

The Court granted plaintiffs' motion to amend complaint and also denied as moot defendant's motion to dismiss.   (Order [45] at 1.) Plaintiffs' amended complaint seeks the following under state law: (1) certification of a class of similarly situated subscribers; (2) declaratory relief prohibiting Charter from (a) collecting franchise fees based on overestimates of future revenue; (b) billing plaintiffs franchise fees in excess of those charged by the LFA to defendant; and (c) failing to refund excessive franchise fee charges; (3) injunctive relief prohibiting Charter from continuing to collect and retain excessive franchise fees; (4) an accounting; (5) recovery of refunds for all excessive fees under their claim for unjust enrichment; (6) recovery of refunds for all excessive fees under their claim for money had and received; (7) recovery of interest on the excessive franchise fees; and (8) recovery of attorneys' fees and costs.   (Am. Compl. [46] at 11-17.)

AO 72A
(Rev.8/82)

Defendant has filed a motion to dismiss plaintiffs' amended complaint (Mot. to Dismiss First Am. Compl. [32]), which is now pending before this Court.   Plaintiffs have responded and filed a motion for oral argument on defendant's motion.   (Mot. for Oral Argument [44].)

<strong><u>DISCUSSION</u></strong>

## I.   <u>MOTION TO DISMISS STANDARD</u>

Under Federal Rule 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief may be granted.   When deciding whether to dismiss a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations of material fact as true. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998).   A court may grant a motion to dismiss if it finds that the plaintiff cannot prove any set of facts consistent with the complaint which would entitle him or her to relief.   *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).   Defendant bears "the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief."   *Beck*, 144 F.3d at 736.

## II.   <u>DEFENDANT'S MOTION TO DISMISS</u>

### A.   Introduction

Plaintiffs contend that defendant is regularly collecting "franchise fees" from its subscribers in excess of those fees that

4

AO 72A
(Rev.8/82)

the law permits the defendant to keep.   Plaintiffs contend that
defendant's actions run afoul of various Georgia common law
prohibitions.  At bottom, plaintiffs contend that defendant is taking
money from its subscribers to which defendant is not entitled, and
then refusing to give the money back.   Plaintiffs contend that the
defendant should not be permitted to get away with such conduct and
that a class action alleging traditional state claims is an effective
and appropriate means to obtain redress for the purportedly numerous
subscribers with small dollar-amount losses, as well as to discourage
the defendant from continuing this conduct in the future.

   To understand the claim, some explanation of franchise fees and
a cable operator's justification for billing them to its subscribers
is necessary.   Pursuant to various Congressional enactments (the
"Cable Acts"), a local government (also known as "local franchising
authorities or "LFAs") may charge a cable operator a franchise fee
for use of the public rights-of-way.[2]  Franchise fees include "any
tax, fee, or assessment of any kind imposed by a franchising
authority or other governmental entity on a cable operator or cable
subscriber, or both, solely because of their status as such ... ,"

---

   [2]. *See* Cable Television Consumer Protection and Competition Act
of 1992, (codified in scattered sections of 47 U.S.C.) (the "1992
Cable Act"), (amending the Cable Communications Policy Act of 1984
(the "1984 Cable Act") and later amended by the Telecommunications
Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (the "1996
Cable Act")).

AO 72A
(Rev.8/82)

47 U.S.C. § 542(g)(1).   LFAs may impose franchise fees on cable operators in any number of ways so long as the total amount does not exceed five percent of the operator's gross revenue.   *See* 47 U.S.C. § 542(b).[3]

The Cable Acts permit cable operators to "pass through" these franchise fee to cable subscribers.   47 U.S.C. § 542, 543.   That is, a cable operator can properly elect not to pay these fees or taxes, themselves, but may instead pass these fees on to the subscriber as an additional fee to be paid on top of the customer's monthly subscription rate.   Calculating a prescribed franchise fee based on the revenue attributable to a particular subscriber's subscription amount is presumably a fairly easy task and has created no controversy that the Court is aware of.   One simply multiplies against the customer's subscription charge the percentage amount, up to 5%, that the LFA has elected to collect of an operator's revenue. The resulting amount must be paid by the subscriber in addition to his regular monthly subscription amount.

What has complicated the matter--both in terms of the operator's authority to collect and of the method of calculation--is that

---

[3]   "For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system to provide cable services." 47 U.S.C. § 542(b).

AO 72A
(Rev.8/82)

portion of the franchisee fee that is attributable to non-subscriber revenue, such as revenue that the operator receives from its advertisers.   Earlier in this decade, some local governments contended that the portion of a franchise fee attributable to non-subscription revenue should <u>not</u> be passed through to the subscriber, but instead should be paid by the advertiser or absorbed by the cable operator.   Responding to this contention, the Federal Communications Commission ("FCC") interpreted the applicable statutory provision to permit cable operators to pass through franchise fees to subscribers based on their entire gross revenue--including revenue attributable to non-subscriber advertising and home shopping commissions.   *The City of Pasadena, Cal., et al.,* 16 F.C.C.R. 18192, 18198-18199, 2001 WL 1167612 (Oct. 4, 2001) ("Pasadena Order").

Given this ruling, the plaintiffs agree that they cannot complain about being assessed franchise fees attributable to non-subscription revenues.   They do emphasize, however, that defendant is entitled to collect from them only that money that is actually used to pay the franchise fees assessed by the local government unit. Plaintiffs allege that instead of collecting just the amount of money necessary to cover these fees, the defendant is instead collecting more money than it is remitting to the LFAs and is then pocketing the difference.   Plaintiffs do complain about this alleged practice and they want their money back, as well as an injunction that requires

AO 72A
(Rev.8/82)

the defendant to cease this practice.

Defendant responds, however, by noting that it cannot know from month-to-month how much non-subscriber revenue it will be getting and that the only way that it can pass this on to the subscriber in a fairly concurrent manner is by estimating each month what that revenue will be.  After arriving at an estimate, the defendant then multiplies that figure by the percentage rate assessed by the LFA, and assesses the resulting amount to the subscriber in addition to his regular subscription rate.  Defendant notes that the FCC permits it to so estimate this revenue, and, therefore, its advance collection from subscribers of fees that may turn out to exceed the appropriate fee is permissible.

The Court is not altogether clear as to defendant's response to plaintiffs' claim that defendant has failed to return excess money to the subscriber once it is determined that the defendant over-collected in a given month.   Presumably, the defendant must acknowledge that this money should be credited or otherwise returned to the subscriber.[4]   Further, as the defendant has not yet filed an

---

[4]   Actually, in a passing sentence or two, the defendant does suggest that even if it is retaining the excess fees, defendant is doing nothing wrong, because, in the deregulated industry in which defendant operates, the defendant could simply stop itemizing this franchise fee as an "add-on" cost and, instead, simply add this fee, and any other amount that it chose, to the subscriber's subscription rate.   See Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss First Am. Compl. [32] at 2.

AO 72A
(Rev.8/82)

answer, it has not yet indicated whether it denies plaintiffs' allegation that it is not returning or crediting any excess collections for the franchise fees. That is, it may well be that defendant will deny that it is doing any of the things of which it is accused.

At least as to the claim that defendant has retained these "overcollected" fees, the normal course of proceedings would typically dictate a period of discovery, after which defendant could file a motion for summary judgment or litigate this claim of unjust retention at trial. Instead, the Court faces a motion to dismiss because the defendant contends that this Court is not empowered to adjudicate this dispute, and that instead only the FCC can preside over plaintiffs' claims. Further, defendant argues that state law cannot be used to vindicate the plaintiffs' claims. It is to these contentions that defendant's motion to dismiss is directed, and to

---

This argument appears to have some flaws. Presumably, as a player in a competitive field, defendant is competing with other providers, with the price of the advertised service being the focus of the competition. Certainly, the defendant could increase its cited price to the subscriber in any amount that it chose. The subscriber, however, would then likely not select a cable operator whose advertised price substantially exceeded a competitor's. If, however, a cable operator can hide a portion of the subscriber fees, which are subject to competitive forces, in a franchise fee or tax that the subscriber will not understand to be a negotiable item, the operator will have increased its revenues without having to suffer the consequences that the market usually visits on such actions: that is, without losing subscribers.

9

AO 72A
(Rev.8/82)

which the Court now turns.

**B.     Has the Defendant Carried Its Burden of Demonstrating That Neither State Law nor a Federal Court Can Vindicate Their Claims?**

As noted, defendant argues that state law cannot give rise to claims against a cable operator as to the amount of franchise fees that are passed on to a subscriber.  Further, defendant argues that only the FCC can adjudicate a subscriber's claim that a cable operator has consistently overestimated franchise fees and then retained these excess fees taken from its subscribers.  Defendant contends that neither this nor any other court can preside over such a dispute.  Plaintiffs insist, however, that their claims are valid state-law claims of misappropriation that can be adjudicated by a state court or, where diversity jurisdiction exists, by a federal court.

At the outset, the Court must note the difficulty that it has had in evaluating the defendant's argument.  Defendant has the burden of persuading the Court that the plaintiffs' state-law claims must be dismissed and that only the FCC can adjudicate any appropriate claims that the plaintiffs might bring.  Yet, defendant has done little more than assert its conclusion, without revealing the analysis that would be necessary to support that conclusion.  Usually, when a defendant contends that only a federal body, applying federal law, can adjudicate a claim that might otherwise sound in state law, the

10

AO 72A
(Rev.8/82)

defendant will rely on the doctrine of preemption and will discuss why that doctrine disfavors any but a federal forum utilizing federal law.   Here, however, the defendant mentions the word only once, in passing, in his memorandum in support of the motion to dismiss. (Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss First Am. Compl. [32] at 1).   Moreover, even after the plaintiffs' response had set out this doctrine as the appropriate analytic framework for the dispute and had contended that there is no preemption in this case, defendant's reply brief is still silent on the point.   Certainly, defendant makes no effort to counter the plaintiffs' argument that the defendant cannot prevail on an assertion of preemption. This is a critical lapse as the defendant has the burden of demonstrating that a plaintiff's state-law claims are preempted by federal law. *Stephen v. American Brands, Inc.*, 825 F.2d 312, 313 (11th Cir. 1987).

Having neglected to set up or discuss any framework to guide the Court's analysis, the defendant's argument largely relies on a 1997 letter from an administrator employed by the FCC, Meredith Jones. According to defendant, this letter reflects the opinion of the administrator that only the FCC can adjudicate any disputes about the propriety of passing through franchise fees to subscriber and that, therefore, federal law preempts state law on the matter.   Yet, even assuming this to be an accurate read of Ms. Jones' letter, the defendant never explains why this Court should defer to the opinion

11

of an official within the FCC, reflected in a letter nine years ago that concerned a different dispute.

As with the assertion of a preemption defense, when a litigant urges a court to defer to an agency's interpretation, there is a protocol that the litigant typically follows in advocating that deference is appropriate.   The analysis almost always begins with a reference to the seminal Supreme Court decision, *Chevron USA, Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984), in which that Court set out the standards to be applied when determining whether to defer to a federal agency's opinion.   Defendant, however, never mentions the word "Chevron" in either its motion to dismiss or in its reply memorandum.   Without some understanding of the applicability of the *Chevron* body of law to the cited letter, this Court cannot determine the extent to which deference to this letter of the FCC official would be appropriate.

In short, the defendant's conclusions could be entirely correct. It may be that federal law supplants state law as to this dispute. It may be that only the FCC, not this Court, can decide this dispute. Yet, as the defendant has not supported its conclusory assertions with the analysis and legal discussion that are necessary  to examine these contentions, defendant has clearly failed to meet its burden of persuading the Court that dismissal is appropriate.   Further, this Court is neither inclined nor able to perform the defendant's

12

advocacy for it.  Accordingly, defendant's motion to dismiss must be denied at this juncture.  As this issue will likely arise again in a motion for summary judgment, however, the Court sets out what it believes to be some of the important legal concepts underlying this dispute.

### C.    Plaintiffs' Claims for Accounting and Refund

Asserting a theory of unjust enrichment under Georgia law, plaintiffs seek, among other things, an accounting and a refund of that portion of the franchise fees imposed on them that exceeded the amount of the franchise fees that the defendant actually paid to franchising authorities.  In order to succeed on its claim that Georgia law is supplanted by federal law, the defendant will need to cite appropriate legal authority that will so persuade the Court.

As noted *supra*, the plaintiffs have set out the general law concerning preemption and explained why they contend that preemption does not apply here.  Specifically, plaintiffs contend that there are three instances in which federal law or regulation preempts state-law claims: (1) express preemption, where a federal statute explicitly preempts state law; (2) complete preemption, where a federal regulatory scheme is so pervasive that one can reasonably infer that Congress left no room for states to implement it; and (3) conflict preemption, where compliance with the state law stands as a substantial obstacle to the accomplishment of the objectives of the

13

federal statute.   (Pls.' Brief in Opp. to Def.'s Mot. to Dismiss First Am. Compl. [38] at 13-14, citing *This That and the Other Gift and Tobacco, Inc. v. Cobb County,* 285 F.3d 1319, 1322 (11th Cir. 2002).)   To prevail on a preemption defense, the defendant will need to overcome plaintiffs' argument that preemption does not apply to this dispute.   Citation to analogous cases in the FCC/cable operator arena will likely help the Court analyze the propriety of the defense. *See, e.g., Liberty Cablevision v. Municipality of Caguas,* 417 F.3d 216, 221-23 (1st Cir. 2005)(because Congress has made it clear that the Cable Act will preempt any inconsistent state law, assessment of local franchise fees, in addition to those allowed by federal law, violated that part of the Cable Act that sets a 5% maximum for such fees; accordingly, the local ordinance was preempted); *Cable Televison Ass'n of New York v. Finneran,* 954 F.2d 91, 98-102 (2nd Cir. 1992) (federal law did not preempt state regulation concerning cable operators' "downgrade charges" to subscribers, as the regulation neither contradicted a specific FCC regulation, nor a Congressional statute, and as Congress did not demonstrate an intention to carve out a wide area free of all state regulation).

If the defendant persuades the Court that there is complete preemption, the defendant will, of course, prevail. If instead the Court concludes that the Cable Act did not preempt all potential

AO 72A
(Rev.8/82)

state regulation or laws that impact the billing practices of a cable operator,[5] defendant will presumably have to identify the specific federal regulation or statutory provision that it contends to be in conflict with the state-law cause of action raised here.    As the defendant relied greatly on the FCC's ruling in the "Pasadena Order,"[6] the defendant will need to explain how a Court-ordered refund of those monies that exceeded the amount of franchise fees actually remitted to local governments would be inconsistent with the pronouncement in *Pasadena* or inconsistent with other portions of the Cable Act or its implementing regulations.    Plaintiffs have already

---

[5]    In arguing that only the FCC can adjudicate this dispute, defendant has relied primarily on the September 18, 1997 letter from Meredith Jones, who was an official within the FCC at that time. However, Ms. Jones' own opinion on preemption, to the extent it is dispositive, is somewhat inconsistent.  On the one hand, she seems to suggest that there is complete preemption in this area.  ("The Commission's rules and procedures, therefore, provide the exclusive means for determining whether franchise fees have been properly 'passed through' and whether the resulting rates are permissible." On the other hand, she seems to indicate that preemption occurs only to the extent that a state law conflicts with the particular goal of the Act:  to pass through franchise fees.  ("State statutes, regulations and common law that have the effect of preventing cable systems from passing through and recovering franchise fees in their entirety...[and] that conflict with the rules and procedures adopted by the Commission...have been preempted."    *See F.C.C. Letter Regarding the Pass-Through of Franchise Fees to Subscribers*, 13 F.C.C.R.  9254,  1997 WL 574920 (Sept.  18,  1997)(emphasis added) ("Jones Letter" attach. as Ex. B to Mot. to Dismiss First Am. Compl. at 2.)

[6]    *The City of Pasadena, Cal., et al.*, 16 F.C.C.R. 18192, 2001 WL 1167612 (Oct. 4, 2001).

15

staked out their position on this point: specifically, a ruling that the defendant cannot keep money that was not remitted to the franchising authority is not a ruling that defeats *Pasadena,* but is a ruling that effectuates it.

In addition to arguing that state-law is preempted here, the defendant also argues that only the FCC can adjudicate a particular subscriber's claims that the cable operator has over-charged him. In making this assertion, defendant has relied solely on Ms. Meredith Jones' 1997 letter. For that letter to have some weight in the analysis, defendant must demonstrate that the Court should defer to the letter, pursuant to *Chevron* principles. Further, even if the Court must defer to the letter, the substance of that letter is rather cryptic to one who is uninitiated in FCC practices. That is, Ms. Jones speaks of the "FCC's rules and procedures," but does not set out how those procedures would work to adjudicate a claim such as plaintiffs'.

In addition, to show that a dispute such as this is within the sole purview of the FCC, the defendant will need to do a much better job explaining away the statements in *American Civil Liberties Union v. F.C.C.*, 823 F.2d 1554 (D.C. Cir. 1987), which indicate that there may still be a role for courts in disputes such as this. In that case, the D.C. Circuit was reviewing FCC orders that implemented the 1984 Cable Act. In one part of the lengthy opinion, the court

16

reviewed an FCC "policy" in which the latter indicated that, while it does have jurisdiction to adjudicate disputes arising under the Cable Act's franchise fee provision, its jurisdiction would be "concurrent with that of the courts."  823 F.2d at 1573.  Further:

> The Commission will exercise its jurisdiction only where the dispute directly impinges on a national policy concerning cable communications and implicates the agency's expertise....Where the dispute concerns a matter of local taxation, the FCC generally will _not_ assert its jurisdiction, because the dispute's relevance to a national communications policy will tend to be "slight" and the Commission's expertise will tend not to be implicated....In these cases, the commission will refer the dispute to "local courts," which are, in the Commission's judgment, better situated to take evidence and delve into matter of local taxation.

_Id._ (emphasis in original; internal citations omitted).

The D.C. Circuit approved this "policy of forebearance," noting that the statute appears to contemplate judicial enforcement of the franchise fee provision and that "the FCC necessarily enjoys discretion in setting its enforcement priorities and identifying those franchise fee disputes that require Commission action."  823 F.2d at 1574.

The D.C. Circuit's _ACLU_ decision was issued twenty years ago, and likely there have been judicial and administrative developments that may supplement its pronouncement.  Nevertheless, the defendant must make a better effort to distinguish _ACLU_ and to educate the Court as

17

to FCC practices if defendant seriously wishes to persuade the Court that only the FCC can adjudicate a claim that a cable operator has improperly kept franchise fees to which it was not entitled.

### D. Plaintiffs' Claim for Injunctive and Declaratory Relief

In addition to seeking an accounting and a refund of all overpaid franchise fees, plaintiffs also seek an injunction forbidding the defendant from "overestimating" these fees in the future. The Court agrees with defendant that plaintiffs face an uphill battle in obtaining such relief, as an "estimate," is, by definition, imprecise. It is therefore difficult to enjoin an "overestimate," without also enjoining an "estimate." Of course, the FCC permits an estimate, and the plaintiffs agree that the Court cannot contravene that body's specific directive.

However, at this stage of the proceedings, where no discovery has occurred, the Court cannot be certain what practices the defendant used to estimate the franchise fees or whether it is possible to enjoin "overestimates" without running afoul of the defendant's right to use "estimates." Moreover, discovery concerning the accounting/refund issue will likely provide the necessary information concerning the injunctive claim. Hence, it makes sense to keep this claim alive while the parties develop the record. Certainly, the defendant can renew its motion when it files a motion for summary judgment at the conclusion of discovery.

AO 72A
(Rev.8/82)

## III.  CONCLUSION

For the foregoing reasons, the Court **DENIES without prejudice** defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [32] and **DENIES** plaintiffs' Amended Motion for Oral Argument [44].

Defendant shall file an Answer by **October 22, 2007.**  The parties shall submit a Joint Preliminary Planning Report and Scheduling Order **by October 29, 2007.**  Discovery shall begin by October 29th, or may begin earlier if the parties agree.  The Court will decide how long discovery should last after reviewing the parties' proposed scheduling order.  In that proposal, the plaintiffs should indicate when they intend to file a motion for class certification.

SO ORDERED, this _____21_____ day of September, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)